THE MILLEDGEVILLE MANUFACTURING COMPANY, plaintiff in error, *vs.* GEORGE S. RIVES, defendant in error.

1.  Where an attachment had been issued against A, and at the trial term it was agreed that B should be substituted for A, and the cause proceed against him :

*Held,* That this was a dissolution of the attachment, and the cause stood upon the footing of an ordinary suit against B, with service waived.

2.  An agreement, by counsel, that a certain paper described in the agreement should be used as evidence, removes all objections to the proof, and to the stamping of the writing.

3.  When there was a settlement, in 1867, of a contract made in 1862, payable in Confederate currency, the basis of which settlement was the value of Confederate money at the date of the contract, which the debtor then paid in cotton, taken at thirty cents per pound, when cotton was in fact selling at twenty-six cents, and the parties agreed, in writing, that if the Courts should settle the basis to be that the true basis of settlement was the value of Confederate money at the maturity of the contract they would modify their settlement accordingly.

The right to open the settlement is made by agreement to turn upon the settlement by the Courts of a rule that Confederate contracts are to be scaled on the basis of the rate of Confederate money at the maturity of the contract.

*Held*, That, before the plaintiff could recover in this case, it was incumbent on him to show that the Court had settled the rule to be as the contract provided, and, as there is no evidence to this effect, a new trial ought to have been granted.

Revenue stamps.   Scaling Ordinance.   Confederate debts. Before Judge Robinson.   Baldwin Superior Court.   February Term, 1871.

This suit was begun by Rives against one Waitzfelder, by attachment.   The sum sworn to was $1,600 00, and the ground for attachment was the non-residence of Waitzfelder. It was levied upon Waitzfelder's property.   Plaintiff's declaration claimed that Waitzfelder owed him $2,614 93, besides interest, for the following reasons : On the 15th of November, 1862, Rives purchased certain land from one Evans, and gave him his note for $5,000 00.   Confederate currency was the sole medium of exchange here, and it was understood between him and Evans that said note was to be discharged in that currency, at its maturity.   Waitzfelder bought the note.   On the 23d of February, 1867, Rives handed Waitzfelder $3,050 25, not as payment of said note, nor as fixing the amount due thereon, but to be held subject to such rule for scaling such debts as the Courts might adopt.   If it was too small he was to pay more ; if too large, defendant was to repay the excess.   The difference either way was to bear interest from that date.   The Courts fixed the rule of scaling at the value of the Confederate currency at the maturity of the contracts.   By that rule, the value of the note on the 23d of February, 1867, was but $435 82.   Waitzfelder pleaded the general issue.   Before the trial, Waitzfelder had answered interrogatories, and disclosed that the note was not his, but belonged to the Milledgeville Manufacturing Company, of which he was president.   By consent, said company was sub-

stituted for Waitzfelder wherever it occurred in the record, and it was agreed that the paper hereinafter mentioned should be " received in evidence as the contract " of said company. Plaintiff's counsel moved to amend the affidavit, attachment and declaration by substituting $2,407 66 for the amount stated in each as principal. This was allowed over defendant's objection.

Defendant's counsel then moved to dismiss the attachment, as amended, because it was not founded upon any attachment for $2,407 66. The motion was overruled. Plaintiff's counsel offered in evidence the following writing:

" Mr. George S. Rives has settled a note, given November 15th, 1862, due December 25th, 1863. He has paid this day said note, at the scale of three for one, which was the rate, at the time the note was given, for land, to S. G. Evans or bearer. Both parties have agreed, if the Courts in general should decide that the scaling is the law, that the scaling should be counted from the time the note falls due, to be governed by the same.

(Signed)                E. WAITZFELDER."
" Witness: F. B. Mopp."

Defendant's counsel objected to the paper, because it was not stamped, because it did not specify the note, and because it was without consideration, being after the payment aforesaid. The paper was then stamped, and the objections were overruled, and the paper was read to the jury.

Rives testified, that the note mentioned in said paper was the note for $5,000 00, mentioned in the declaration; that he bought eighteen hundred acres of land, in Hancock county, Georgia, from Evans, at $11,000 00, paid him $2,000 00 in Confederate currency, at par, gave his note for $4,000 00, due one day after date, and said $5,000 00 note; it was understood and agreed with Evans that these notes were to be paid in said currency. Defendant bought both notes. When the last one fell due, he offered to pay Waitzfelder, but he

said he had sent the note off to buy cotton. He said the land bought was of average quality, worth $4 00 or $5 00 per acre, before the war. The payment made the 23d of February, 1867, was in cotton, at thirty cents per pound. He delivered a surplus of cotton, for which Waitzfelder paid him twenty-six and a half cents per pound. This adjustment took up the $4,000 00 note, at three for one, and with *that* he was satisfied, but claims the surplus on the $5,000 00 note.

He showed that he delivered seventeen thousand two hundred and forty-one pounds of cotton, and that, on the 25th of December, 1863, $1 00 of gold was worth $21 00 of Confederate money. Defendant showed that said land was worth from $6 00 to $7 00 per acre, before the war, and from $7 00 to $8 00 per acre, in the fall of 1862 ; that said cotton was very inferior, in bad condition, having a tare of from twenty to forty pounds per bale, and that cotton in Milledgeville that day sold from twenty-four to twenty-six cents per pound. It also appeared that Rives offered to pay, as aforesaid, in said cotton, at thirty cents per pound, if Waitzfelder would sign said paper, but not otherwise, and refused to take his notes and the $2,000 00 in cash from Waitzfelder, and convey to him the land, saying that it was his wife's land, and was worth $15,000 00. Gold, on the 23d of February, 1867, was at a premium of thirty-eight and a half per cent., as compared with United States currency.

The Court charged the jury, " when the contract is ascertained, the measure of recovery is the value of the contract to the holder, just as if it had been performed at the appointed time, and in the appointed currency," and read to them the Scaling Ordinance of 1865. The jury found for plaintiff $2,500 00, with interest from the 23d of February, 1867, and costs.

Defendant moved for a new trial, upon the grounds, that the verdict was for more than was sued for, contrary to the charge of the Court and the evidence. Plaintiff's counsel

The Milledgeville Manufacturing Company vs. Rives.

wrote off from the verdict the excess above $2,407 66, as principal, and the Court refused a new trial. That refusal is assigned as error.

WILLIAM McKINLEY, for plaintiff in error.

LINTON STEPHENS, for defendant.

McCAY, Judge.

Some of the points made in this attachment, and some of the rulings of the Court, on the trial, in reference thereto, are, as we think, good objections, but we do not put our judgment upon them.

1. It is clear to us that this proceeding, in the shape it finally took, ceased to be an attachment at all. The very basis of an attachment is the levy on the defendant's property. After Waitzfelder was dropped, and the Milledgeville Manufacturing Company was substituted, by consent, *for* him, it seems absurd to call the proceeding an attachment. There is no levy on the defendant's property. The attachment is upon its face, on the ground of the non-residence of the defendant, yet the defendant is a Georgia incorporation. We think the necessary consequence of the agreement is, to dissolve the attachment, and, by consent of all parties, to treat the case as an ordinary suit, with service waived. In this view of the case, the amendment to the declaration is unobjectionable, as it is wholly within the Code, section 2429, as to amendments.

2. We are not clear that the Court was not right, in any view of it, in admitting the paper after it was stamped in the presence of the Court. The government got its tax, and that is the great object of the Revenue Act. We are not clear, however, that, to make the instrument void, under the Act, it must not affirmatively appear that the paper was not stamped with intent to evade the law. But, we think the paper was rightly admitted under the agreement of counsel.

The very foundation of the suit, as it stands, was the consent that this paper was a valid paper and obligatory upon the defendant. To say it is void is to repudiate the very terms of the agreement.

3. We are very clear, however, that the verdict is wrong. 1st. It is inequitable in a very high degree. The amount actually paid by the plaintiff, in his note, was, at the most, not over $2,800 00, and this in cotton, at thirty cents, when the market price was but twenty-six and one-half; this, too, in cotton badly bailed, with a heavy tare, and very plainly, from the evidence, not up to the mark of a good article. A fair calculation will make the amount paid not over $2,600 00. Yet here is a verdict for the plaintiff for $2,500 00, with interest from the 22d of February, 1867, nearly the full amount paid. In other words, the defendant gets *nothing* for the note. It would have been better had the. holder of it thrown it in the fire. We are disposed to grant large latitude to juries in their judgment of the equities between the parties, but it is absurd to say this is equity. We do not, however, think the written paper authorizes a recovery at all, except in one event, that there was proof of such a rule having been established as that Confederate contracts are to be scaled at the value of the currency when the note matured. Here was a settlement in fact. The rate of scaling was three to one. Cotton was taken at considerably more than its value. This was the agreement of the parties, both of them of age, and acting on their judgment. Many persons think such a mode of settlement is the only equitable mode, to-wit : the value of the money at the date of the contract, and very often this is true. The parties settled by that rule, but agreed that, if the Courts should settle that the true rule was the value of Confederate money at the *maturity* of the contract, the settlement should be opened. The plaintiff in the case and the Court and jury seem to have understood this written agreement to be that the parties should hereafter settle at whatever rule the Courts should establish. Such

are not the terms of the agreement. The Courts have established that the true rule is "right in equity and good conscience," between the parties in view of all the facts. That is not the agreement. The settlement is to be opened in one contingency, to-wit: if the Courts should hold that such contracts are to be scaled at the value of the currency at the maturity of the note. There seems to have been no proof offered upon this point. We know, it is true, what the rule is as established. Is it as provided for in the agreement? Clearly not. This was a *settlement :* a fair enough one under the circumstances. The parties agreed that it should be opened in a certain contingency. Until that contingency is proved to have happened no right of action accrued.

Judgment reversed.